**THE AGUILERA LAW GROUP, APLC**
Eric Aguilera (SBN 192390)
eaguilera@aguileragroup.com
Lindsee Falcone (SBN 268072)
lfalcone@aguileragroup.com
V. René Daley (SBN 199914)
rdaley@aguileragroup.com
23046 Avenida De La Carlota, Suite 300
Laguna Hills, CA 92653
T: 714-384-6600 / F: 714-384-6601

Attorneys for Plaintiffs, THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

# UNITED STATE DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation, and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY., a Delaware Corporation; and DOES 1 through 10 inclusive,<br><br>Defendants. | CASE NO.:<br><br>**PLAINTIFFS' COMPLAINT FOR:**<br>**(1) DECLARATORY RELIEF-DUTY TO DEFEND**<br>**(2) DECLARATORY RELIEF-DUTY TO INDEMNIFY** |

1

**TRAVELERS' COMPLAINT**

Come now Plaintiffs THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA and plead the following allegations on information and belief in support of their complaint herein:

**JURISDICTION**

1. Plaintiff THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT ("TRAVELERS INDEMNITY") is now, and at all relevant times was, a corporation, existing under the laws of the State of Connecticut, with its principal place of business in Connecticut. TRAVELERS INDEMNITY is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

2. Plaintiff TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("TRAVELERS PROPERTY") is now, and at all relevant times was, a corporation, existing under the laws of the State of Connecticut, with its principal place of business in Connecticut. TRAVELERS PROPERTY is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

3. TRAVELERS PROPERTY and TRAVELERS INDEMNITY are herein collectively referred to as "TRAVELERS."

4. TRAVELERS is informed and believes and thereon alleges that Defendant BNSF RAILWAY COMPANY ("BNSF") is now, and at all relevant times was, a corporation, existing under the laws of the State of Delaware, with its principal place of business in Texas. BNSF is, and at all relevant times was, a railway operating in the State of California.

5. Defendants sued herein as DOES 1 through 10, inclusive, are sued herein by such fictitious names because TRAVELERS is unaware of the true names and capacities of said DOE Defendants. TRAVELERS will amend this Complaint to reflect the true names when the same are ascertained. TRAVELERS is informed and believes and thereon alleges that said DOE Defendants are responsible for the acts, events, and circumstances alleged herein, or are interested parties to this action.

**TRAVELERS' COMPLAINT**

6. This Court has original jurisdiction under 28 U.S.C. § 1332 in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interests, two-hundred and fifty thousand dollars ($250,000).

7. This Court has diversity jurisdiction as all of the plaintiffs are domiciled and maintain their principal place of business in Connecticut and BNSF is domiciled in Delaware with its principal place of business in Texas.

## VENUE

8. Plaintiff TRAVELERS is informed and believes and thereon alleges that the acts and/or omissions at issue in this litigation took place in this judicial district within the State of California and the Underlying Action is pending in this judicial district. Venue, therefore, lies with this Court.

## GENERAL ALLEGATIONS

**A.     The Relevant Insurance Policies**

9. TRAVELERS issued consecutively written primary commercial general liability policies to J.L. Patterson & Associates, Inc. numbered 680-6069R253-TCT, effective 9/18/2013-9/18/2015 ("Primary Policies").

10. TRAVELERS additionally issued consecutively written excess commercial general liability policies to J.L. Patterson & Associates, Inc. numbered XSM-CUP-4161T291 and effective 9/18/2013-9/18/2015 ("Excess Policies").

11. Under the terms of the Primary Policies, TRAVELERS has an obligation to pay those sums that an insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" during the policy period, subject to various limitations and exclusions in the policies. The terms, limitations, and exclusions of the Primary Policies are set forth, in part, in Commercial General Liability Form CG 00 01 10 01, which provides in part as follows:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement.**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

\* \* \*

**SECTION V– DEFINITIONS**

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

22. "Your work":

  a. Means:

    (1) Warranties or representations made at any time with respect to the

    fitness, quality, durability, performance or use of "your work", and

  (2) Materials, parts or equipment furnished in connection with such work or operations.

 b. Includes:

  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

  (2) The providing of or failure to provide warnings or instructions.

12. The Primary Policies further contains additional insured endorsements, which provide as follows:

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Names of Additional Insured Person(s) or Organization(s):**
BNSF RAILWAY …

**Location of Covered Operations:**
ALL OPERATIONS

A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage", "personal injury" or "advertising injury" caused, in whole or in part, by:

  1. Your acts or omissions; or
  2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

> This insurance does not apply to "bodily injury" or "property damage" occurring, or "personal injury" or "advertising injury" arising out of an offense committed, after:
>
> 1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
> 2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
>
> * * *
>
> **ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION**
>
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> SCHEDULE
> **Names of Additional Insured Person(s) or Organization(s):**
> BNSF RAILWAY …
>
> **Location of Covered Operations:**
> ALL OPERATIONS
>
> …
> Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule or this endorsement performed for that additional insured and included in the "products-completed operations hazard".

13. The Primary Policies also include an endorsement entitled "Exclusion – Engineers, Architects or Surveyors Professional Liability", which provides:

6

**TRAVELERS' COMPLAINT**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following is added to Paragraph **2., Exclusions, of SECTION I- COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

    **Professional Services**

    "Bodily injury" or "property damage" arising out of the rendering of or failure to render any "professional services".

2. The following is added to Paragraph **2., Exclusions, of SECTION I- COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

    **Professional Services**

    "Personal injury" or "advertising injury" arising out of the rendering of or failure to render any "professional services".

3. The following is added to **DEFINITIONS** Section:

"Professional services" means any service requiring specialized skill or training, including:

a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;

b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design,

    software development or programming, service, or selection of a contractor or subcontractor; or

    c. Monitoring, testing, or sampling service necessary to perform any of the services described in Paragraph a. or b. above.

14. The Primary Policies also include an endorsement entitled "Amendment - Non Cumulation Of Each Occurrence Limit Of Liability and Non Cumulation Of Personal And Advertising Injury Limit," which provides:

> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **1.** Paragraph 5 of SECTION III LIMITS OF INSURANCE, is amended to include the following:
>
> Non cumulation of Each Occurrence Limit -- If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment by us and any affiliated insurance company under the other policies because of such "occurrence".

15. The terms, limitations, and exclusions of the Excess Policies are set forth, in part, in Commercial Excess Liability (Umbrella) Form UM 00 01 11 03, which provides in part as follows:

> **1. INSURING AGREEMENT.**
>
> a.    We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

16. The Excess Policies further contain substantially the same definitions and exclusions as set forth at paragraph 11.

17. The Excess Policies also contain an endorsement entitled "Amendment of

Who Is An Insured", which provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
>
> Paragraph **2.f.** of SECTION II WHO IS AN INSURED is deleted and replaced by the following:
>
> **f.** Any other person or organization insured under any policy of the "underlying insurance" listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATIONS of this insurance. This insurance is subject to all the provisions and limitations upon coverage under such policy of "underlying insurance", and, the limits of insurance afforded to such person or organization will be:
>
> **(i)** The difference between the "underlying insurance" limits and the minimum limits of insurance which you agreed to provide; or
>
> **(ii)** The limits of insurance of this policy
>
> whichever is less.

18. The Excess Policies also include an endorsement entitled "Exclusion – Engineers, Architects or Surveyors Professional Liability", which provides:

> This endorsement modifies insurance provided under the following:
> COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
>
> 1. The following is added to Paragraph **3., Exclusions, of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE; and COVERAGE B PERSONAL INJURY AND ADVERTISING INJURY in COVERAGES (Section I):**

9

**TRAVELERS' COMPLAINT**

**Professional Services**

"Bodily injury" or "property damage," "personal injury" or "advertising injury" arising out of the rendering of or failure to render any "professional services".

2. The following is added to **DEFINITIONS (Section V)**:

"Professional services" means any service requiring specialized skill or training, including the following:

a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;

b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or

c. Monitoring, testing, or sampling service necessary to perform any of the services included in a. or b. above.

19. The Excess Policies additionally provide:

Non cumulation of Each Occurrence Limit - If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a **COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE** policy for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

> To determine the limit of our liability, all "bodily injury" and "property damage" arising out of continuous or repeated exposure to the same general conditions shall be considered one "occurrence".

**C.     The Project and Underlying Litigation**

20.     TRAVELERS is informed and believes that, in 2013, BNSF negotiated the purchase of an easement with North Richmond Properties for the purpose of moving BNSF's track across a small portion of North Richmond Properties' property.

21.     TRAVELERS is informed and believes that BNSF then engaged the services of J.L. Patterson & Associates to prepare a project manual, as well as the plans and specifications related to all aspects of the project.

22.     TRAVELERS is informed and believes that BNSF then engaged the services of Asta Associates to perform the construction work related to the project.

23.     TRAVELERS is informed and believes that J.L. Patterson & Associates performed no construction work at the project.

24.     TRAVELERS is informed and believes that North Richmond Properties claims that BNSF's track relocation project "substantially altered the natural flow of water" by "the creation of a berm" that held back the natural flow of water and causing North Richmond Properties' land to be flooded.

25.     On August 1, 2017, North Richmond Properties filed a complaint against BNSF Railway Company, J.L Patterson & Associates and Asta Associates in Contra Costa County Superior Court, Case No. MSC 17-01431, entitled *North Richmond Properties v. BNSF Railway Company, et al.* (the "Underlying Action").

26.     TRAVELERS is informed and believes and based thereon alleges that North Richmond Properties therein alleged causes of action against BNSF for breach of contract, specific performance, and negligence arising from a defective storm drain and water intrusion onto North Richmond Properties' property.

27.     TRAVELERS is informed and believes that North Richmond Properties' negligence cause of action alleged that: "J.L. Patterson & Associates designed and prepared

the plans, drawings and specifications for the installation of the drainage improvements," "the railroad and Asta relied on the engineering drawings of defendant J. L Paterson & Associates," and "Defendant Asta Associates is a contractor who …perform[ed] grading, construction and drainage work."

28.  TRAVELERS is informed and believes and based thereon alleges that on or about May 16, 2019, North Richmond Properties amended its complaint to add causes of action for nuisance and trespass.

29.  TRAVELERS is informed and believes that the amended complaint continued to allege that "JLP, engineers hired by BNSF, prepared the plans for the Richmond Rail Connector, including the storm drainage plan that BNSF ensured would prevent any anticipated flooding on NRP's property as a result of BNSF's construction plan for the Easement Area during times of rain."

30.  TRAVELERS is informed and believes and based thereon alleges that J.L. Patterson & Associates' participation in BNSF's project was limited solely to preparing the plans for the project and that J.L. Patterson & Associates performed no construction work.

### D. **BNSF's Tender**

31.  BNSF, as an alleged additional insured to the Primary Policies and Excess Policies, tendered its defense and indemnity of North Richmond Properties' complaint to TRAVELERS for the respective claims being alleged against it in the Underlying Action.

32.  On or about August 28, 2019, TRAVELERS denied the tender of BNSF.

33.  On or about July 24, 2024, BNSF renewed its tender to TRAVELERS and again demanded a defense and indemnity.

34.  BNSF and TRAVELERS disagree regarding whether coverage exists for the Underlying Action under the Primary Policies and Excess Policies. Without a declaration ruling upon this coverage issue, the parties remain at an impasse.

**FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF – DUTY TO**

# DEFEND

## (By TRAVELERS Against BNSF and DOES 1-10)

35. TRAVELERS hereby re-alleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

36. An actual, present and justiciable controversy has arisen and now exists between TRAVELERS on the one hand and BNSF on the other, concerning the respective rights, duties and obligations of TRAVELERS, if any, to pay for the defense of BNSF against the allegations made in the Underlying Action under the Primary Policies.

27  In particular, TRAVELERS contends and BNSF denies the following:

    a. TRAVELERS has no obligation to defend BNSF in the Underlying Action with regard to alleged damages other than covered "property damage" caused by an "occurrence" "caused, in whole or in part, by [J.L. Patterson & Associates'] acts or omissions."

    b. No covered "property damage" caused by an "occurrence" "caused, in whole or in part, by [J.L. Patterson & Associates'] acts or omissions." has been alleged in the Underlying Action.

    c. There is no coverage available to BNSF for the Underlying Action, and TRAVELERS is under no duty under the Primary Policies to defend BNSF with regard to the Underlying Action.

28. TRAVELERS is informed and believes that BNSF disputes these contentions and contends that the Primary Policies require TRAVELERS to provide a defense to BNSF in the Underlying Action.

29. By reason of the foregoing, a declaratory judgment is both proper and necessary, so that the respective rights, duties, and obligations as between TRAVELERS and BNSF may be determined under the provisions of the applicable Primary Policies.

## SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF- DUTY TO INDEMNIFY

**(By Plaintiff TRAVELERS Against BNSF and DOES 1-10)**

**<u>Count One</u>**

30. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as if fully set forth herein.

31. An actual, present and justiciable controversy has arisen and now exists between TRAVELERS on the one hand and BNSF on the other, concerning the respective rights, duties and obligations of TRAVELERS, if any, to pay for indemnity of BNSF against the damages sought in the Underlying Action under the Primary Policies.

32. In particular, TRAVELERS contends and BNSF denies the following:

   a. TRAVELERS has no obligation to indemnify BNSF in the Underlying Action with regard to alleged damages other than covered "property damage" caused by an "occurrence" "caused, in whole or in part, by [J.L. Patterson & Associates'] acts or omissions."

   b. No covered "property damage" caused by an "occurrence" "caused, in whole or in part, by [J.L. Patterson & Associates'] acts or omissions has been alleged in the Underlying Action.

   c. There is no coverage available under the Primary Policies to BNSF for the Underlying Action, and TRAVELERS is under no duty to indemnify BNSF or pay any judgment awarded to North Richmond Properties with regard to the Underlying Action.

   d. Even if there was coverage under the Primary Policies, it would be limited by the non-cumulation endorsement to a single occurrence limit.

33. TRAVELERS is informed and believes that BNSF disputes these contentions and contends that the Primary Policies require TRAVELERS to indemnify BNSF in the Underlying Action.

34. By reason of the foregoing, a declaratory judgment is both proper and necessary, so that the respective rights, duties, and obligations as between TRAVELERS and BNSF may be determined under the provisions of the applicable Primary Policies.

**Count Two**

30. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as if fully set forth herein.

31. An actual, present and justiciable controversy has arisen and now exists between TRAVELERS on the one hand and BNSF on the other, concerning the respective rights, duties and obligations of TRAVELERS, if any, to pay for indemnity of BNSF against the damages sought in the Underlying Action under the Excess Policies.

32. In particular, TRAVELERS contends and BNSF denies the following:

   a. TRAVELERS has no obligation to indemnify BNSF in the Underlying Action with regard to alleged damages other than covered "property damage" caused by an "occurrence" "caused, in whole or in part, by [J.L. Patterson & Associates'] acts or omissions."

   b. No covered "property damage" caused by an "occurrence" "caused, in whole or in part, by [J.L. Patterson & Associates'] acts or omissions has been alleged in the Underlying Action.

   c. There is no coverage available under the Excess Policies to BNSF for the Underlying Action, and TRAVELERS is under no duty to indemnify BNSF or pay any judgment awarded to North Richmond Properties with regard to the Underlying Action.

   d. Even if there was coverage under the Excess Policies, it would be limited by the non-cumulation endorsement to a single occurrence limit.

33. TRAVELERS is informed and believes that BNSF disputes these contentions and contends that the Excess Policies require TRAVELERS to indemnify BNSF in the Underlying Action.

34. By reason of the foregoing, a declaratory judgment is both proper and necessary, so that the respective rights, duties, and obligations as between TRAVELERS and BNSF may be determined under the provisions of the applicable Excess Policies.

**TRAVELERS' COMPLAINT**

# PRAYER FOR RELIEF

TRAVELERS respectfully prays for judgment, as follows:

1. Under the First Cause of Action, a judicial declaration that TRAVELERS has no obligation under the Primary Policies to defend BNSF in the Underlying Action.

2. Under the Second Cause of Action, Count One, a judicial declaration that TRAVELERS has no obligation under the Primary Policies to indemnify BNSF as against damages sought or awarded in the Underlying Action.

3. Under the Second Cause of Action, Count One, a judicial declaration that even if TRAVELERS owed an indemnity obligation to BNSF as against the damages sought or awarded in the Underlying Action, said obligation would be limited to a single occurrence limit under the Primary Policies.

4. Under the Second Cause of Action, Count Two, a judicial declaration that TRAVELERS has no obligation under the Excess Policies to indemnify BNSF as against damages sought or awarded in the Underlying Action.

5. Under the Second Cause of Action, Count Two, a judicial declaration that even if TRAVELERS owed an indemnity obligation to BNSF as against the damages sought or awarded in the Underlying Action, said obligation would be limited to a single occurrence limit under the Excess Policies.

5. For prejudgment interest;

6. For costs of suit herein;

7. For such other and further relief as this Court deems just and proper.

DATED: September 6, 2024

THE AGUILERA LAW GROUP, APLC

_____
A. Eric Aguilera
Lindsee Falcone
V. René Daley
Counsel of record for plaintiffs
The Travelers Indemnity Company of Connecticut and Travelers Property Casualty Company of America